UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LARRY DANCY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 2:19-cv-00426-JRS-DLP |
| WATSON *Mr., Complex Warden*, OLIVER *Mr.*, | ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

Plaintiff Larry Dancy brings this action pursuant to *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), against Defendants Warden Watson and Food Service Administrator Oliver, in their individual capacities. Specifically, Plaintiff brings an Eighth Amendment claim alleging that Defendants failed to address a rodent infestation, and that as a result, he was served with contaminated food.

As set forth below, Plaintiff's conditions of confinement claim present a new *Bivens* context, and "special factors" counsel against an expansion of *Bivens* here. *See Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). Indeed, nationwide, circuit and district courts have rejected conditions of confinement claims on *Abbasi* grounds, including in a case nearly identical to this one involving failure to address a pigeon infestation. Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

In his Complaint, Plaintiff alleges that both Warden Watson and Food Services

Administrator Oliver violated the Eighth Amendment because they knew that the food service preparation area was infested with rodents. [Filing No. 1, at 4-5.] Plaintiff alleges that he was served meals that contained mice feces, which caused him to become sick. [*Id.*] Plaintiff also brought an Eighth Amendment claim against Health Services Administrator McCoy for failing to provide Plaintiff with adequate medical treatment. [*Id.* at 4.]

On October 18, 2019, the Court issued an Order Screening Complaint and Directing Further Proceedings. [Filing No. 14.] In its Order, the Court dismissed Plaintiff's claims related to his medical treatment. [*Id.* at 2-3.] Accordingly, Plaintiff's only remaining claim is an Eighth Amendment claim based on Defendants' purported failure to address a rodent infestation. [*Id.* at 3.]

## II. STANDARD OF REVIEW

A party may bring a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss a claim for which a plaintiff is not entitled to relief. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011) (citation omitted). In other words, a plaintiff's complaint must "provide the 'grounds' of her 'entitle[ment] to relief'" based upon more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is proper "if the complaint fails to set forth 'enough facts to state a claim to relief that is plausible on its face.'" *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 570). In ruling on a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the well-pled facts alleged by the plaintiff and all reasonable inferences that

2

can be drawn therefrom. *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. ARGUMENT

In *Abbasi*, 137 S. Ct. at 1857, the Supreme Court declined—once again—to extend *Bivens* to a new category of constitutional claims, emphasizing that expanding the *Bivens* remedy is now a "disfavored" judicial activity.[1] After *Abbasi*, determining whether a *Bivens* remedy is available amounts to a three-step analysis. First, the court must determine whether the claim arises in a new *Bivens* context. *Id.* at 1864. If so, the next question is whether there is "an alternative, existing process for protecting the [relevant] interest [which] amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *accord Abbasi*, 137 S. Ct. at 1858. And, finally, courts consider whether there are any other "special factors counseling hesitation before authorizing a new kind of federal litigation." *Wilkie*, 551 U.S. at 550 (citation omitted); *accord Abbasi*, 137 S. Ct. at 1857.

Here, applying this inquiry, the Court should decline to create a *Bivens* remedy for a conditions of confinement claim. As discussed at length below, the Supreme Court and courts around the country have refused to create a *Bivens* remedy when considering similar claims.

### A. A Conditions of Confinement Claim is a New *Bivens* Context

The first question a court must ask in determining whether a *Bivens* remedy is available is whether the claim arises in a new *Bivens* context—in other words, whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137

---

[1] The Court further noted that, "in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Abbasi*, 137 S. Ct. at 1856.

3

S. Ct. at 1859, 1864. "[D]ifferences that are meaningful enough to make a given context a new one" may include, but are not limited to, "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1860. If a case presents a new *Bivens* context, then courts must consider whether "special factors counsel hesitation" in recognizing a new *Bivens* claim. *See id.* at 1857.

The Supreme Court has recognized only three *Bivens* claims, including the claim in *Bivens* itself: (1) a Fourth Amendment claim against federal agents who violated the prohibition against unreasonable searches and seizures when they handcuffed a man in his own home without a warrant, *Bivens*, 403 U.S. 388; (2) a Fifth Amendment claim against a Congressman for firing his female administrative assistant, which was an alleged act of gender discrimination, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma, purportedly resulting in his death, *Carlson v. Green*, 446 U.S. 14 (1980). *Abbasi*, 137 S. Ct. at 1854-55, 1860. Moreover, in the last three decades, the Supreme Court has repeatedly declined to create new implied damages remedies under *Bivens* in a number of contexts. *See Abbasi*, 137 S. Ct. at 1857 (collecting cases).

Determining whether a case presents a new *Bivens* context is not based on whether a particular circuit has recognized a *Bivens* remedy in a specific context, but whether *the Supreme Court itself* has recognized a *Bivens* claim in that context. *See Abbasi*, 137 S. Ct. at 1859 ("If the

4

case is different in a meaningful way from previous *Bivens* cases decided by *this Court*, then the context is new." (emphasis added)).

Here, following the Court's screening process, Plaintiff's only remaining claim is an Eighth Amendment conditions of confinement claim based on an alleged failure to address a rodent infestation at the Federal Correctional Complex – Terre Haute. [Filing No. 1, at 4-5; Filing No. 14, at 3.] But the Supreme Court specifically held in *Abbasi* that conditions of confinement claims are a new *Bivens* context. *Abbasi*, 137 S. Ct. at 1860 (conditions of confinement claims "bear little resemblance to the three *Bivens* claims the Court has approved in the past"). And while the conditions of confinement claims in *Abbasi* arose under the Fourth and Fifth Amendments, courts including the Ninth Circuit have applied *Abbasi's* holding to conditions of confinement claims arising under the Eighth Amendment. *See, e.g., Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir. 2019), *cert. denied*, No. 19-5776, 2019 WL 5686563 (U.S. Nov. 4, 2019) ("Schwarz's Eighth Amendment claim regarding unsanitary cell conditions presents a new *Bivens* context because Schwarz does not allege a failure to treat a serious medical condition, which was the issue in *Carlson*, 446 U.S. at 16, 100 S.Ct. 1468. Rather, the basis of Schwarz's claim—a nonfunctioning toilet—resembles the conditions of the confinement claim the Supreme Court rejected in *Abbasi*."); *Hodges v. Matevousian*, No. 118CV00790AWIEPGPC, 2019 WL 5566055, at *5 (E.D. Cal. Oct. 29, 2019) ("this Court has held that Eighth Amendment conditions of confinement claims present a new *Bivens* context because while arising under the cruel and unusual punishment clause, *Carlson* concerned inadequate medical care."). Therefore, because the Supreme Court has held that conditions of confinement claims present a new *Bivens* context, the Court must conduct a "special factors" analysis before allowing the damages suit to proceed. *See Abbasi*, 137 S. Ct. at 1859-60, 1864.

5

### B. There Are Alternative, Existing Processes Precluding Expansion of *Bivens*

In determining whether to expand the *Bivens* remedy, courts must consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550. As the Seventh Circuit has recognized, "[w]here Congress has established an alternative remedial structure to protect a constitutional right, the Supreme Court has strongly cautioned that the courts should not create a second remedy." *Goree v. Serio*, 735 F. App'x 894, 895 (7th Cir. 2018) (affirming district court's dismissal of inmate's due process claim because it was not cognizable under *Bivens* post-*Abbasi*). In fact, where an alternative process exists, it "usually precludes a court from authorizing a *Bivens* action." *Abbasi*, 137 S. Ct. at 1865. Here, there are alternative processes and relief available to Plaintiff that should preclude extending *Bivens* to conditions of confinement claims.

First, in *Abbasi*, the Supreme Court recognized the availability of injunctive relief to address conditions of confinement claims. *Abbasi*, 137 S. Ct. at 1862. The Supreme Court noted that unlike other contexts in which a *Bivens* remedy had been recognized:

> respondents do not challenge individual instances of discrimination or law enforcement overreach, which due to their very nature are difficult to address except by way of damages actions after the fact. Respondents instead challenge large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners. To address those kinds of decisions, detainees may seek injunctive relief.

*Id.* Similarly, here, Plaintiff's allegations regarding the food service at FCC – Terre Haute relate to the conditions of confinement for inmates generally, and not an individual instance of overreach targeted at him. Under those circumstances, *Abbasi* counsels that injunctive relief, not a *Bivens* suit, is the correct remedy. *Id.*

6

Furthermore, in 1996 Congress passed the Prison Litigation Reform Act of 1995, Pub. L. No.104-134, 110 Stat. 1321 (1996) ("PLRA"), which requires an inmate to exhaust available administrative remedies before filing a challenge to prison conditions. *See* 42 U.S.C. § 1997e (a). To that end, as contemplated by Congress, BOP maintains a comprehensive four-step administrative remedy program. 28 C.F.R. § 542.10 et seq. The BOP's administrative remedy procedure, whereby inmates can seek formal review of any complaint regarding any aspect of their imprisonment, is an alternative process that counsels against an expansion of *Bivens* to the case at hand. *See* 28 C.F.R. §§ 542.10-542.19. The administrative remedy program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see also Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1237 (10th Cir. 2005). And regardless of whether Plaintiff invoked or received relief from this process, that this alternative remedial structure is present counsels against inferring a *Bivens* cause of action in this new context. *See Abbasi*, 137 S. Ct. at 1863 (noting that when alternative methods of relief are available a *Bivens* remedy usually is not); *Malesko*, 534 U.S. at 72-74 (considering, in declining to extend *Bivens* to respondent's claims, that it was not "a situation in which claimants in respondent's shoes lack effective remedies"); *Lovett v. Ruda*, No. 17-CV-02010-PAB-KLM, 2018 WL 4659111, at *9 (D. Colo. Sept. 28, 2018), *appeal dismissed*, No. 18-1413, 2018 WL 8058575 (10th Cir. Dec. 11, 2018) ("The *Bivens* analysis appears to focus on the adequacy of remedies in the abstract rather than on a particular plaintiff's track record in pursuing relief.").

Finally, the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), in aggregate with other remedies, provides another means through which inmates can bring claims regarding

7

conditions of confinement. While decades ago, the Supreme Court rejected the argument that the availability of an FTCA claim, standing alone, precluded a *Bivens* action, *Carlson*, 446 U.S. at 19, the Supreme Court's views have significantly evolved in the interim. *Abbasi*, 137 S. Ct. at 1856 ("[I]n light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today."). It is now clear that state law remedies, aggregated with other alternative remedies, can also be probative to the special factors question. *See*, *e.g.*, *Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (declining to recognize a *Bivens* remedy in part where "state tort law authorizes adequate alternative damages actions").

In *Schwarz*, for example, the Ninth Circuit found that an inmate's ability to bring his conditions of confinement claim under the FTCA demonstrated that he had alternative processes to pursue his claims. 761 F. App'x at 734-35; *see also Badley v. Granger*, No. 2:17-CV-00041-JMS-DLP, 2018 WL 3022653, at *3 (S.D. Ind. June 18, 2018) (refusing to create *Bivens* remedy in part because the inmate could have pursued an FTCA claim). Because a number of alternative remedial structures exist, the Court should not create a *Bivens* remedy for Plaintiff's rodent infestation claim.

### C. Special Factors Counsel against a *Bivens* Remedy for Conditions of Confinement Claims

Furthermore, there are other special factors counseling against the expansion of *Bivens* here. In the context of prisoners' conditions of confinement claims, fifteen years after the Supreme Court decided *Carlson*, Congress has passed the PLRA, which was intended to limit prison litigation that was overburdening the legal system. *See, e.g.*, *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and

improve the quality of prisoner suits[.]"); 141 Cong. Rec. S7526 (Daily Ed. May 25, 1995) (statement of Senator Kyl) ("Statistics . . . show that inmate suits are clogging the courts and draining precious judicial resources."). As the Supreme Court noted, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Abbasi*, 137 S. Ct. at 1865. The Supreme Court found that because Congress specifically considered prisoner claims and did not provide for a standalone damages remedy against individuals, "it suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.*; *see also Badley*, 2018 WL 3022653, at *4 ("Congress has been active in the area of prisoners' rights, and its actions—not creating new rights—do not support the creation of a new *Bivens* claim.").

Additionally, in *Abbasi*, 137 S. Ct. at 1856, the Court identified a "number of economic and governmental concerns" that courts must consider before recognizing an implied cause of action. These include the substantial defense costs often created by claims against federal officials; Congress' "substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government;" and "the time and administrative costs attendant upon intrusions resulting from the discovery and trial process." *Id.* Thus, the determination of whether to recognize a damages remedy "requires an assessment of its impact on governmental operations systemwide," one that considers "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." *Id.* at 1858. In the context of *Bivens* specifically, the Court acknowledged that the imposition of *Bivens* liability may result in government officials, facing

9

personal liability for damages, refraining from taking necessary and lawful action and reiterated that the costs and difficulties of later litigation may interfere with the discharge of their duties. *See id.* at 1863.

Here, extending the *Bivens* remedy to hold employees liable in their personal capacities for the food service at the federal institution where they work (or other conditions about which an inmate might complain) would unduly burden governmental operations. As the Supreme Court has noted, *Bivens* suits have never been "a proper vehicle for altering an entity's policy." *Malesko*, 534 U.S. at 74. Unlike instances of assault or deprivations of medical care, prison conditions, whether good or bad, are rarely the result of a single individual's actions, but are instead the result of policy and budgetary decisions implemented by a number of people. *See Abbasi*, 137 S. Ct. at 1862. (*Bivens* remedy inappropriate where plaintiffs challenge "large-scale policy decisions concerning the conditions of confinement" and not "individual instances of discrimination or law enforcement overreach"). Therefore, the burden on government employees forced to defend in their individual capacities the policies and practices of their employer is an additional factor counseling hesitation. *See Silva v. Ward*, No. 16-CV-185-WMC, 2019 WL 4721052, at *8 (W.D. Wis. Sept. 26, 2019) (noting that creating a *Bivens* remedy for a conditions of confinement claim would "divert substantial resources away from orderly prison administration.").

Finally, separation of powers considerations are also a special factor counseling hesitation. *See Abbasi,* 137 S. Ct. at 1857 ("When a party seeks to assert an implied cause of action under the Constitution itself . . . separation-of-powers principles are or should be central to the analysis."). Since 1948, Congress has consistently delegated the protection of federal inmates to the Bureau of Prisons. *See* 18 U.S.C. § 4042(a)(3) (directing the BOP, "under the

10

direction of the Attorney General," to "provide for the protection… and discipline of all persons charged with or convicted of offenses against the United States"). This delegation of power suggests that judicial action in superintending prison conditions is disfavored. *See Turner v. Safley*, 482 U.S. 78, 84-85(1987) ("Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.").

> **D.** **Nationwide, Circuit and District Courts Have Declined to Create a *Bivens* Remedy in the Context of Conditions of Confinement Claims**

Finally, in addition to the Supreme Court in *Abbasi*, other courts around the country have found that conditions of confinement claims arise in a new context and have declined to create a *Bivens* remedy for these claims. *See, e.g.*, *Schwarz*, 761 F. App'x at 732 (non-functioning toilet); *Silva*, 2019 WL 4721052, at *1-9 (unsanitary cell conditions); *Blank v. United States*, No. 4:17-CV-609-A, 2017 WL 5591633, at *4 (N.D. Tex. Nov. 17, 2017) (pigeon infestation); *Lovett*, 2018 WL 4659111, at *8 (failure to provide adequate food); *Mercer v. Matevousian*, No. 118CV00265DADBAMPC, 2018 WL 3917969, at *1 (E.D. Cal. Aug. 14, 2018) (failure to provide handicap shower); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 63-66 (E.D.N.Y. 2017), *aff'd*, 755 F. App'x 67 (2d Cir. 2018) (denial of outdoor recreation, cleaning supplies, dental hygiene supplies and being provided with dirty clothing, dirty razors, and shoes without laces); *Richardson v. United States*, No. CIV-18-763-D, 2019 WL 4038223, at *7 (W.D. Okla. June 28, 2019), report and recommendation adopted, No. CIV-18-763-D, 2019 WL 4017616 (W.D. Okla. Aug. 26, 2019) (hazardous work assignment in kitchen); *Thomas v. Matevousian*, No.

117CV01592AWIGSAPC, 2019 WL 266323, at *1 (E.D. Cal. Jan. 18, 2019) (denial of supplies such as soap, toothpaste, deodorant, razors, shampoo, writing paper, and envelopes); *Blackwell v. United States*, No. CV 15-08968 PA (AFM), 2019 WL 6619876, at *3-5 (C.D. Cal. Sept. 16, 2019) (cell ventilation).

*Blank* is directly analogous to this case. In *Blank*, an inmate brought an Eighth Amendment *Bivens* claim against prison officials for failing to address a pigeon infestation at the facility. 2017 WL 5591633, at *1. Blank alleged that exposure to the pigeons caused him to develop histoplasmosis. *Id.* Applying *Abbasi*, the United States District Court for the Northern District of Texas declined to create a *Bivens* remedy for failure to address a pigeon infestation, noting that "[t]he Supreme Court has recently explained that a *Bivens* claim may only be asserted in three limited sets of circumstances, none of which exists here with regard to the pigeon infestation." *Id.* at *4. Similarly, here the Court should decline to create a *Bivens* remedy with respect to a rodent infestation.

*Lovett* is also instructive. In *Lovett*, an inmate sued the Food Service Supervisor and other prison officials for providing inadequate food service that did not meet his dietary needs. 2018 WL 4659111, at *1. The United States District Court for the District of Colorado declined to create a *Bivens* remedy, holding that failure to accommodate an inmate's dietary restrictions differed from the Eighth Amendment claim recognized in *Carlson* for failure to provide medical care and that inmate had a number of alternative remedies. *Id.* at *8-9. Similarly here, the Court should not create a *Bivens* remedy to enable an inmate to sue a Food Services Administrator and Warden for alleged deficiencies in the food service at FCC – Terre Haute.

Accordingly, the Court should reach the same conclusion as the Supreme Court and courts across the country and decline to create a *Bivens* remedy for Plaintiff's rodent infestation conditions of confinement claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants Warden Watson and Food Service Administrator Oliver, in their individual capacities, by counsel, respectfully request that the Court grant their Motion to Dismiss Plaintiff's Complaint and grant all other just and proper relief.

Respectfully Submitted,

JOSH J. MINKLER
United States Attorney

By: /s/ *Rachana N. Fischer*
Rachana N. Fischer
Assistant United States Attorney

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 31, 2020, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Service was also sent to the following pro se plaintiff by first class, United States Mail, prepaid and properly addressed to:

LARRY DANCY
11622-007
Terre Haute - USP
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, IN 47808

/s/ *Rachana N. Fischer*
Rachana N. Fischer
Assistant United States Attorney
Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204